

# THE ATTORNEY GENERAL
# OF TEXAS

AUSTIN 11, TEXAS

**PRICE DANIEL**
ATTORNEY GENERAL

June 13, 1951

Hon. H. A. Beckwith, Chairman
Board of Water Engineers
Austin, Texas          Opinion No.V-1189

Re:  Authority of Interstate
     Compact Commissioner to
     compact with respect to
Dear Sir:              use of water.

Your request for an opinion reads as follows:

"We respectfully request an opinion as to the meaning of the word 'use' as same appears in the Canadian, Red and Sabine Rivers Compact Authorization Act (Acts of the 51st Legislature, 1949, Chapter 380, Page 716). Section 1 of the Act reads as follows:

"'Section 1. The Governor of this State shall, with the advice and consent of the Senate, appoint some qualified person Interstate Compact Commissioner to <u>represent the State of Texas in Conferences</u> with duly appointed Compact Commissioners for other affected States, and a representative of the government of the United States appointed by the President for such purpose, <u>to negotiate an agreement with each of the affected States respecting the use, control and disposition of the waters of the Canadian, Red and Sabine Rivers and their tributaries.</u>' /Emphasis added/

"The same language 'use, control and disposition' is contained in the authorization act creating a Compact Commissioner for Texas as to the Pecos River Compact. (See Acts 49th Legislature, 1945, Chapter 159, Pages 206-207.)

Hon. H. A. Beckwith - Page 2 -V-1189

> "We desire to know whether a Com-
> pact Commissioner can lawfully compact
> so as to place limitations upon the in-
> ternal beneficial use of waters appor-
> tioned to Texas, or whether his au-
> thority is limited to obtaining the
> equitable share of physical amount of
> the waters due Texas."

Standing alone, the language of the Act
in question is broad enough to authorize negotiation
and agreement by the Interstate Compact Commissioner
respecting internal use of water. It must be pre-
sumed, however, that the Legislature intended to grant
authority only to the extent which it could legally
do so, - in short, that the authority conferred ex-
tended only to constitutional means of accomplishment.

Compacts between States do not become bind-
ing until adopted by the Legislatures of the States
with the consent of Congress. U.S. Const., Art. I,
Sec. 10, par.3. Since a compact to become effective
must be enacted into law, it would seem that the lan-
guage of the act appointing a compact commissioner is
relatively unimportant since his acts have no force
until ratified by the Legislature, in which event any
excess of authority is cured by ratification. This
practical aspect of the problem is persuasive of the
fact that the Legislature will ordinarily intend to
confer upon compact commissioners the same authority
which it would have to make agreements covering the
same subject matter. Unless a contrary intent clear-
ly appears, the act should be so construed. In our
opinion, the language of the Acts in question must
be construed as granting to the Commissioners au-
thority to make agreements to the same extent as the
Legislature could respecting the use, control, and
disposition of the waters of the Pecos, Canadian, Red,
and Sabine Rivers. But in no event do the Acts grant
authority in excess of legislative authority, and in
all events the negotiations and agreements of the Com-
missioners are of no effect until and unless approved
by the Legislature.

Just as in the case of any legislative act,
the only restriction with respect to legislative au-
thority to enact compacts must be found in the State
and Federal Constitutions. State ex rel. Baird v.

Joslin, 227 Pac.543 (Kan. Sup.1924); La Plata River & Cherry Ditch Co. v. Hinderlider, 25 P.2d 187 (Colo. Sup. 1933);State ex rel. Dyer v.Sims,71 S.Ct.557 (1951).

Your question has been generally stated without reference to any particular limitation upon use. Therefore, our reply must likewise be general. Insofar as a compact may place unconstitutional limitations upon the internal beneficial use of water, it must fail. Each limitation must be separately construed with this in mind. A limitation in itself is not invalid. Hinderlider v. La Plata River & Cherry Creek Ditch Co., 304 U.S. 92 (1938), reversing 70 P.2d 849 (Colo. Sup.1937).

It may be stated as a general proposition in settling controversies between States, whether through compact or by decision of the United States Supreme Court, that the primary object is to secure an equitable apportionment of water between the States. Kansas v. Colorado, 206 U.S.46 (1907); Hinderlider v. La Plata River & Cherry Creek Ditch Co., supra. In arriving at this apportionment, it has been said by Justice Holmes in New Jersey v. New York, 283 U.S.336, 343 (1931), that "the different traditions and practices in different parts of the country may lead to varying results but the effort always is to secure an equitable apportionment without quibbling over formulas." To arrive at equitable apportionment, if it is necessary or desirable to compact with reference to internal beneficial use of water, such an agreement would be permissible so long as no constitutional provisions are violated. For example, if equitable apportionment is arrived at under a formula placing restrictions upon storage capacity, a provision which fixes the amount of allowable storage within a state by restricting storage to certain uses would be a means of arriving at equitable apportionment under the formula and would be valid if within constitutional limits.

## SUMMARY

The Texas Compact Commissioner has authority to compact with respect to internal beneficial use of water

so long as his agreements are with-
in constitutional limits. His agree-
ments are not binding in any event
unless and until approved by the
Legislature.

Yours very truly

PRICE DANIEL
Attorney General

By *H. O. Pruett, Jr.*

H. D. Pruett, Jr.
Assistant

APPROVED:

Jesse P. Luton, Jr.
Reviewing Assistant

Charles D. Mathews
First Assistant

HDP:bt